**BENDERSON DEVELOPMENT COMPANY, INC., Plaintiff–Appellant,**

v.

**NEUMADE PRODUCTS CORPORATION, Defendant–Appellee.**

No. 07–0504–cv.

United States Court of Appeals, Second Circuit.

April 4, 2008.

84

Patricia Gillen, Gresens & Gillen LLP (James W. Gresens, Gresens & Gillen LLP, Craig A. Slater, Harter Secrest & Emery LLP, of Counsel), Buffalo, N.Y., for Plaintiff–Appellant.

Robert E. Knoer, Knoer, Crawford & Bender, LLP, Buffalo, N.Y., for Defendant–Appellee.

PRESENT: Hon. JOHN M. WALKER, JR., Hon. GUIDO CALABRESI, Circuit Judges, Hon. STEFAN R. UNDERHILL, District Judge.[1]

## SUMMARY ORDER

Plaintiff–Appellant Benderson Development Company ("Benderson"), a developer of commercial real estate, brought this action against Defendant–Appellee Neumade Products Corporation ("Neumade"), its former lessee, to seek compensation under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a), CERCLA contribution under 42 U.S.C. § 9613(f) and (g)(2), and damages for breach of contract and violations of state law. Benderson now appeals from a final judgment of the United States District Court for the Western District of New York (Schroeder, Magistrate Judge), entered on January 16, 2007. That judgment dismissed Benderson's sole remaining cause of action (that "Defendant has refused to acknowledge its environmental cleanup obligations as set forth in the Lease Agreement and has not provided Benderson with any environmental clearance, nor has Defendant paid Benderson rental fees and associated expenses due and owing pursuant to the Lease Agreement"). We assume the parties' familiarity with the procedural history, facts, and relevant issues on appeal.

We review a district court's grant of summary judgment *de novo,* utilizing the same standard as the District Court, *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.,* 472 F.3d 33, 41 (2d Cir.2006), and we may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court, *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64–65 (2d Cir.1997). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material

1. The Honorable Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Parks Real Estate,* 472 F.3d at 41 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A court reviewing a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir.2003).

The District Court interpreted paragraph 54C of the parties' lease to require Neumade to pay liquidated damages if a governmental authority having jurisdiction required an "environmental clearance" and then only if Neumade subsequently failed to deliver the leased premises to Benderson in a "'clean' condition, as specified by law." Because it was undisputed that no such clearance was required by a governmental authority, the District Court granted summary judgment to Neumade. On appeal, Benderson contends that paragraph 54C imposes on Neumade an obligation—independent of the environmental clearance requirement—to pay liquidated damages until such time as it delivers the premises in a "'clean' condition," namely, a condition that satisfies the laws, rules, and regulations regarding "toxic, hazardous or similar substances" that are mentioned in paragraph 54A of the lease.

Without deciding whether the District Court correctly interpreted the parties' contract, we affirm the District Court's decision, for even if the phrase "'clean' condition" refers back to the laws, rules, and regulations referenced in paragraph 54A, as Benderson contends, Benderson has failed to proffer evidence from which a reasonable juror could find that the premises were not delivered in a "'clean' condition."

Viewed in the light most favorable to Benderson, these are the relevant facts: Benderson hired GZA GeoEnvironmental of New York ("GZA") to conduct an inspection of the leased premises in early 1997, before Neumade's lease extension expired. On March 31, 1997, GZA advised Benderson that it had discovered potential environmental concerns. After further inspection, GZA reported that it had found contaminants that exceeded the soil and cleanup objectives in a guidance memorandum issued by the New York State Department of Environmental Conservation ("DEC"). Accordingly, in or around the time that Neumade quit the leased premises in June 1997, Benderson demanded that Neumade resolve the contamination problems it had discovered. Sometime in late June, Neumade retained an environmental waste clean-up firm to clean the premises and appropriately dispose of its waste. Benderson thereafter leased the premises to at least one other tenant. Over a year later, after instituting this law suit, Benderson commissioned GZA to perform a new inspection of the premises. According to the firm's April 1999 report, which was based on inspections conducted in January of that year, all the contaminants detected were below DEC guidance levels. Accordingly, GZA recommended "no additional work related to impacted soil." Nonetheless, Benderson commissioned another inspection. The resulting report, based on sampling and testing conducted in August of 1999, concluded that levels of hazardous substances exceeded DEC guidance levels in an area where Neumade had at one time dumped waste, but which was available to others after Neumade's departure. Finally, on October 4, 2000, Benderson forwarded GZA's findings to DEC to inquire whether additional investigation or remediation was necessary. And when DEC concluded that the premises "may be an inactive hazardous waste disposal site,"

Benderson executed an Order on Consent with DEC in which it agreed to clean the property.

Assuming *arguendo* that the lease agreement means what Benderson claims, we fail to see how this evidence could convince any reasonable juror that Neumade breached the agreement. There is no evidence affirmatively establishing that the premises were not in the " 'clean' condition" specified by law when Neumade surrendered them in June 1997. The only evidence casting doubt on the state of the premises is from August 1999 or later, well after Neumade left the premises and subsequent to a report, also by GZA, made in April 1999, which concluded that any contamination that existed was within allowable limits.

We have considered all of Plaintiff's arguments and we find them without merit. Accordingly, the judgment of the District Court is hereby AFFIRMED.